## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

TANYA ZACHARY, et al.       )
                           )
       Plaintiffs,        )
                           )
v.                          )      **Case No. 02-CV-496-TCK-FHM**
                           )      **[consolidated with**
RESCARE OKLAHOMA, INC., and   )           **03-CV-836-TCK-FHM]**
RESCARE, INC.,            )
                           )
       Defendants.    )

## ORDER

Before the Court is Defendants' Motion for Partial Summary Judgment Regarding the Good Faith/Reasonableness Defense to Alleged Willful Violations of the Fair Labor Standards Act (Docket No. 260).[1] The title of Defendants' motion suggests that they only seek judgment that the good-faith defense contained in 29 U.S.C. § 260 applies, which would preclude an award of liquidated damages. However, the substance of Defendants' motion makes clear that they also seek judgment that any alleged violations were not "willful" and that a two-year statute of limitations under 29 U.S.C. § 255 applies, which would limit the length of Plaintiffs' recovery period. (*See* Defs.' Mot. for Partial Summ. J. Regarding the Good Faith/Reasonableness Defense to Alleged Willful Violations of the FLSA at 2 ("ResCare is entitled to summary judgment establishing that any violation of the FLSA was not willful and that ResCare's actions were taken in good faith."). Also before the Court is Plaintiffs' Motion for Partial Summary Judgment (Docket No. 240).

---

[1] Defendants filed a motion for summary judgment on this same legal issue on April 12, 2004. At a hearing held November 21, 2005, Judge Ellison, formerly assigned to the case, deferred ruling on this issue. On September 26, 2006, pursuant to a new scheduling order, Defendants filed the instant motion. The Court has considered only the arguments and evidence presented in the newly filed motion.

I.      **Procedural History**

Plaintiffs are or have been employed by Defendants as habilitation training specialists ("HTS") or habilitation training specialist supervisors ("HTSS").  Plaintiffs worked with developmentally disabled clients of Defendants.  Plaintiffs allege that Defendants failed to pay them overtime as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*., and that such failure was willful.  Defendants contend Plaintiffs were exempt from the overtime provisions of the FLSA pursuant to the companionship services exemption contained in 29 U.S.C. § 213(a)(15).

Plaintiffs in Case No. 02-CV-496 filed their Amended Complaint on August 1, 2002, and the case was assigned to Judge James O. Ellison.  Plaintiffs in Case No. 03-CV-836 filed their Complaint on December 5, 2003, and the case was assigned to the undersigned.  The undersigned transferred Case No. 03-CV-836 to Judge Ellison as related to Case No. 02-CV-496.  On December 30, 2004, Judge Ellison granted the parties' Joint Motion to Consolidate, and the cases were consolidated for all purposes pursuant to Federal Rule of Civil Procedure 42(a).

In October of 2005, Judge Ellison heard arguments on the parties' cross motions for summary judgment on the issue of liability.  By Order dated November 18, 2005, Judge Ellison addressed eighteen (18) specific households and granted in part and denied in part the motions for summary judgment.   By Order dated January 13, 2006, Judge Ellison addressed eleven (11) additional households and granted in part and denied in part the motions for summary judgment.  On February 8, 2006, upon the retirement of Judge Ellison, the cases were transferred to the undersigned.  On March 2, 2006, Magistrate Judge Frank H. McCarthy conducted a scheduling conference and entered a scheduling order to govern the remaining events in the case.  Pursuant to this scheduling order, the parties filed additional motions for summary judgment.  By Order dated

November 30, 2006, the undersigned addressed one motion for summary judgment, ruling that Defendants were "joint employers" for purposes of FLSA liability.  (*See* Docket No. 293.)  The Court now turns to the remaining motions for summary judgment.

## II.     Summary Judgment Standard

Summary judgment is proper only if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  The moving party bears the burden of showing that no genuine issue of material fact exists.  *See Zamora v. Elite Logistics, Inc.*, 449 F.3d 1106, 1112 (10th Cir. 2006) (citation omitted).  The Court resolves all factual disputes and draws all reasonable inferences in favor of the non-moving party.  *Id.* (citation omitted).  However, the party seeking to overcome a motion for summary judgment may not "rest on mere allegations" in its complaint but must "set forth specific facts showing that there is a genuine issue for trial."  FED. R. CIV. P. 56(e).

## III.    Statute of Limitations - 29 U.S.C. § 255

The statute governing the FLSA limitations period provides:

> (a) [An FLSA action] may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a **willful violation** may be commenced within three years after the cause of action accrued.

29 U.S.C. § 255 (emphasis added).  The burden is on the employee to prove that the employer committed a willful violation.  *See Terwilliger v. Home of Hope, Inc.*, 21 F. Supp. 2d 1305, 1308 (N.D. Okla. 1998).  "The standard for willful violations is whether the employer 'knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA].'"  *See Reich v. Monfort, Inc.*, 144 F.3d 1329, 1334 (10th Cir. 1998). "If an employer acts reasonably in

determining its legal obligation, its action cannot be deemed willful . . . ." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 n.13 (1988).  "Negligence or an incorrect assumption that a pay plan complies with the FLSA do not meet the criteria for a willful violation of the FLSA." *Terwilliger*, 21 F. Supp. 2d at 1308.  Whether an FLSA violation is willful is a mixed question of law and fact but factual issues predominate.  *Id.*  Where there are disputed issues of fact, this Court submits the issue of willfulness to the jury.  *See Linn v. Developmental Svcs. of Tulsa, Inc.*, 891 F. Supp. 574, 580 (N.D. Okla. 1995).

Defendants' conduct alleged to be prohibited by the FLSA is their application of the companionship services exemption to deprive Plaintiffs of overtime pay from August 1999 to December 2003.  Under the companionship services exemption, an exemption from overtime is granted to "any . . . employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves."  29 U.S.C. § 213(a)(15).  "Domestic service employment" is defined in the relevant regulations as "services of a household nature performed by an employee in or about a private home."  29 C.F.R. § 552.3.  "Congress created the companionship services exemption to enable guardians of the elderly and disabled to afford to have their wards cared for in their own private homes as opposed to institutionalizing them."  *Linn*, 891 F. Supp. at 577.  "All exemptions to the FLSA must be narrowly construed and are limited to those establishments plainly and unmistakably within the terms and the spirit of the exemption invoked."  *See id.* (quotation omitted).  Defendants assert that they did not pay overtime because the residences in which Plaintiffs were working were "private homes" and therefore qualified for the companionship services exemption.  Plaintiffs assert that such decision was in reckless disregard of Defendants' FLSA obligations, such that Plaintiffs are entitled

to the three-year statute of limitations that applies to "willful" violations.

The undisputed evidence in the summary judgment record reveals the following timeline of relevant events. In May of 1995, the undersigned entered an opinion in *Linn v. Developmental Services., Incorporated*, 891 F. Supp. 574, 579 (N.D. Okla. 1995), which held that HTSSs (employed by an entity other than Defendants here) were entitled to FLSA overtime because the residences at issue were more closely analogous to state-maintained facilities than private homes. Key factors in that case were that the defendant acquired the residences and the furniture for the residences; maintained a set of keys to the residences; made decisions on the number of people and composition of people in a residence; were signatories on the leases; and paid the rent for the clients to the landlord. *Id.*

In September of 1995, Defendants entered the Oklahoma market. In 1997, Plaintiffs began complaining about Defendants' failure to pay overtime. On April 4, 1997, Mr. Lou Greer, a Wage-Hour Investigator with the United States Department of Labor ("DOL") Wage and Hour Division, sent a letter to ResCare Oklahoma in Oklahoma City, stating:

> [I]t is alleged that employees employed as [HTSs] regularly work in excess of forty hours in a week without receiving time and one-half. . . . While certain employees can be considered "exempt" from the Act's requirements, **it appears that these employees are working in a non-exempt capacity and are, therefore, entitled to overtime compensation.** . . . My purpose in writing this letter is to request that you review the material provided . . . then to review your pay practices to see that they conform to these requirements.

(Defs.' Mot. for Partial Summ. J. Regarding the Good Faith/Reasonableness Defense to Alleged Willful Violations of the FLSA at Ex. 3 (emphasis added).) On September 22, 1997, the same investigator sent a letter to ResCare, Inc. in Louisville, Kentucky, stating, "This will advise you that I have closed my investigation of your Oklahoma City branch office under the provisions of the Fair

Labor Standards Act of 1938.  **I did not find any violations of the Act.**"  (*Id.* at Ex. 4 (emphasis added).)[2]

In May 2000, the Tenth Circuit issued a decision in *Johnston v. Volunteers of America, Incorporated*, 213 F.3d 559, 565 (10th Cir. 2000), wherein the circuit affirmed another determination by this Court that certain employees were entitled to overtime because they were not working in private homes.  Following this decision, David Waskey ("Waskey"), general counsel for ResCare, Inc., prepared a "little graph chart" comparing the residences at issues in *Johnston* to the residences served by ResCare Oklahoma.  (*See* Waskey Dep. 37:11-39:1, Defs.' Mot. for Partial Summ. J. Regarding the Good Faith/Reasonableness Defense to Alleged Willful Violations of the FLSA at Ex. 5; Comparison Chart, *id.* at Ex. 6.)[3]  When asked about the legal analysis performed in deciding not to pay overtime, Waskey stated:  "Well, again, without waiving any privilege, as I previously discussed, I did after the one decision [*Johnston*] you know, factually go through the elements.  We also had the DOL audit.  We also had the opinion that I'm not sure if it was appealed. It should have been, definitely it should have been.  So there was certain legal analysis done at least by myself." (*See* Waskey Dep. 37:19-38:5, Defs.' Mot. for Partial Summ. J. Regarding the Good Faith/Reasonableness Defense to Alleged Willful Violations of the FLSA at Ex. 5.)[4]

---

[2] Although this case involves the Tulsa office, Plaintiffs have presented no evidence to indicate that this opinion was inapplicable or less persuasive in relation to the Tulsa office.

[3] Defendants waived privilege in order to provide this chart as an exhibit.  The chart was prepared by Waskey no later than July 21, 2000, at which time the chart was faxed by a ResCare Oklahoma employee to Waskey.  (*See* Defs.' Mot. for Partial Summ. J. Regarding the Good Faith/Reasonableness Defense to Alleged Willful Violations of the FLSA at Ex. 6.)

[4] The record before the Court is unclear as to what "opinion" Waskey is referring that "should have been appealed" or how that opinion impacted his decision to deny overtime.  However, the other two bases mentioned by Waskey form the basis of the Court's ruling.

In October 2000, Defendant ResCare Oklahoma was sued in the Northern District of Oklahoma by fifty HTSs who asserted they were entitled to overtime because, *inter alia*, they were not employed in private homes.  *See Brown v. ResCare of Okla.*, Case No. 00-CV-893-K(E) (N.D. Okla. 2000). ResCare Oklahoma was represented by the same counsel as in this litigation.  On May 8, 2002, the *Brown* case settled.  In April 2002, Judge Claire Eagan of the Northern District of Oklahoma ruled that HTS and HTSS employees of an employer other than Defendants in this case were not employed in private homes and were entitled to overtime.  *See Welding v. Bios Corp.*, 00-CV-771-EA(M) (Docket No. 54).[5]

Effective January 1, 2003, Defendant began classifying Oklahoma HTS and HTSSs as non-exempt, began paying overtime, and "adjusted their hourly rates accordingly." (*See* Brunett Dep. 67:20-68:23, Plfs.' Resp. to Defs.' Mot. for Partial Summ. J. Regarding the Good Faith/Reasonableness Defense to Alleged Willful Violations of the FLSA at Ex. 4.)  They also implemented an "overtime approval process."  (*Id.* at Ex. 14.)

Based on the above evidence, which is largely undisputed, Defendants argue they are entitled to judgment as a matter of law on the issue of willfulness.  Plaintiffs argue that they are entitled to judgment as a matter of law or, in the alternative, that there are disputed issues of material fact precluding judgment in Defendants' favor.

The Court concludes that there are no material facts in dispute and that Defendants are entitled to judgment as a matter of law as to the issue of willfulness.  First, Defendants cannot be found to be in reckless disregard of their obligations under the FLSA because they were, at all

---

[5] This decision by Judge Eagan was eventually reversed on appeal on grounds that each living unit must be examined individually rather than as a whole. *Welding v. Bios Corp.*, 353 F.3d 1214, 1219 (10th C ir. 2004).

relevant times,  in possession of a letter from the DOL stating that their conduct at Oklahoma operations did not violate the FLSA.  This letter issued after an investigation.  Although Plaintiffs state at the conclusion of their response brief that there are disputed facts regarding "the extent of and information provided in the informal conversations with the Department of Labor investigator," Plaintiffs have presented no evidence in support of this argument.  (*See* Plfs.' Resp. to Defs.' Mot. for Partial Summ. J. Regarding the Good Faith/Reasonableness Defense to Alleged Willful Violations of the FLSA at p. 25.)  Plaintiffs ultimately bear the burden of proving that Defendants' reliance on the letter was misplaced or reckless for a specific reason, and Plaintiffs have presented no evidence, let alone sufficient evidence, to create a dispute of fact regarding the propriety of Defendants' reliance on the 1997 DOL letter.

The Court rejects Plaintiffs' argument that the opinion letter from the investigator is not evidence of a lack of willfulness because it is not from the actual Administrator of the Wage and Hour Division.  The cases cited by Plaintiffs in support of this argument either relate exclusively to the defense under 29 U.S.C. § 259, which is not at issue here, or are otherwise unpersuasive.  *See, e.g., Hodgson v. Square D. Co.*, 459 F.2d 805, 807-11 (6th Cir. 1972) (discussing only section 259).[6] Instead, the Court relies on a decision in this district that found the oral opinions of an investigator, combined with DOL documents stating that the companionship exemption applied, were sufficient to show a lack of willfulness, despite the fact that no written decision from the DOL  had been

---

[6] Defendants thoroughly distinguished all Plaintiffs' cited cases, and the Court adopts these arguments in its ruling.  (*See* Reply to Plfs.' Resp. to Defs.' Mot. for Partial Summ. J. Regarding the Good Faith/Reasonableness Defense to Alleged Willful Violations of the FLSA at 5-6.)

received.  *See Welding v. Bios Corp.*, 00-CV-771-EA(M) (Docket No. 54 at 13).[7]  In this case,

Defendants had substantially more than oral advice.  They had a written statement issued after an

investigation, which this Court finds to be significant evidence of a lack of willfulness.  *See also*

*Terwilliger v. Home of Hope, Inc.*, 21 F. Supp. 2d 1306, 1306-07 (N.D. Okla. 1998) (reliance on

internal dialogue, discussion with attorney, and statements made by person at industry conference

found sufficient to evidence a lack of willfulness).

Second, after the Tenth Circuit's decision in *Johnston* in 2000, Defendants' decision not to

apply the exemption was also based on a side-by-side comparison of the residences at issue in

*Johnston* and the residences at issue in Defendants' Oklahoma operations.  This comparison chart

reveals an internal decision-making process that attempts compliance with the FLSA.  Plaintiffs

purportedly "dispute" the accuracy of Defendants' conclusions in the comparison chart, including

Defendants' conclusions that the clients controlled access to keys, chose their homes, and provided

input in firing and hiring staff members, in an attempt to show that Defendants' decision to apply

the exemption was reckless.  (*See* Plfs.' Resp. to Defs.' Mot. for Partial Summ. J. Regarding the

Good Faith/Reasonableness Defense to Alleged Willful Violations of the FLSA at p. 6-8.)  Plaintiffs

did not, however, cite to any supporting evidence, such as the affidavit of an employee.  Instead,

Plaintiffs state that the facts are disputed "as contrary to the inferences within the paragraphs."  This

statement, whatever it means, does not establish a genuine issue of material fact.  Even if these

"disputes" with the reasonableness of Defendants' legal analysis were supported with evidence, they

would likely evidence nothing more than a disagreement over application of the exemption, which

---

[7]  As previously explained in footnote 5, this decision by Judge Eagan was reversed on appeal on other grounds.  See *Welding v. Bios Corp.*, 353 F.3d 1214, 1219 (10th Cir. 1004).

is at issue in every case, and would likely not rise to the level of recklessness required for a willful violation.

Third, the existence of certain case law decided in the Northern District of Oklahoma finding that the companionship exemption did not apply to the HTS and HTSSs in those cases does not render Defendants' behavior reckless. In all such cases, application of the companionship exemption was a fact-specific inquiry that turned on a close examination of the residences at issue. Defendants engaged in such a fact-specific inquiry in determining how to treat their Oklahoma operations. Plaintiffs have not shown that Defendants' operations were so similar to the operations at issue in prior decisions that Defendants were on notice their conduct was illegal. This is particularly true in light of the continuing evolution of case law in this district. *See Welding v. Bios Corp.*, 00-CV-771-EA(M) (Docket No. 54 at 13) ("As Bios argues, its obligation to pay overtime was far from clear, given the split of authority in this district as to whether service providers for the developmentally disabled were required to pay overtime to their HTS staff").

Fourth, the existence of other cases in which Defendants were sued does not render Defendants' behavior reckless in this case. Plaintiffs point to a Consent Decree in a case out of the Western District of Virginia wherein ResCare, Inc. was sued by the DOL for overtime violations and eventually entered a Consent Decree agreeing to make sure its practices were in compliance with certain regulatory materials related to "sleep time." Plaintiffs have provided the Court with no evidence regarding the specifics of the West Virginia settlement or how it should have impacted Defendants' decision regarding the companionship services exemption in this case.[8] Plaintiffs also

_____

[8] Thus, this case is distinguishable from this Court's decision in *Linn*, in which the Court found a question of fact existed on willfulness because the defendant had been required by the Oklahoma Court of Appeals to pay overtime compensation to an employee who was similarly

-10-

rely on the settlement of the *Brown* case in May 2002, which was pending before this Court. Without citation to the record, Plaintiffs assert that the *Brown* settlement resulted in ResCare Oklahoma "stating that it would modify its pay practices to pay overtime." (*See* Plfs.' Resp. to Defs.' Mot. for Partial Summ. J. Regarding the Good Faith/Reasonableness Defense to Alleged Willful Violations of the FLSA at ¶ 21, p. 6.) *Brown* was settled pursuant to a confidential settlement agreement about which Plaintiffs nor their counsel have personal knowledge. There are no admissible facts in the record indicating that the *Brown* settlement somehow rendered Defendants' alleged violations in this case reckless. This case is therefore distinguishable from *Reich v. Monfort, Incorporated*, 144 F.3d 1329, 1334-35 (10th Cir. 1998), in which the details of prior settlements involving similar violations were part of the evidentiary record and in which an "audit disclosed violations that were the same as those cited in the present action."

Finally, Plaintiffs argue that, despite the 1997 DOL letter and the *Johnston* analysis, Defendants must have taken additional affirmative steps in order to avoid a willful violation. Specifically, Plaintiffs argue Defendants should have sought an actual opinion letter from the Administrator of the DOL Wage and Hour Administrator, rather than merely the local investigator. This Court, however, has "reject[ed] the implication that the only way to avoid a finding of recklessness is to seek an opinion from the Department of Labor or to consult an attorney." (*See Scott v. Magna Community Living Svcs.*, 04-CV-733-TCK-FHM, Report and Recommendation of Magistrate Frank H. McCarthy (Docket No. 198), adopted as Order of this Court (Docket No. 204).)

Accordingly, the Court finds that there are no material issues of fact in dispute and that

---

situated to employees therein.

Defendants are entitled to a two-year statute of limitations.[9]

**V.      Good-Faith Defense to Award of Liquidated Damages - 29 U.S.C. § 260**

The statute governing the good-faith defense to an award of liquidated damages provides:

> [I]f the employer shows to the satisfaction **of the court** that the act or omission giving rise to such action **was in good faith and that he had reasonable grounds** for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended, **the court may, in its sound discretion,** award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title.

29 U.S.C. § 260 (emphasis added).  To establish the defense, an employer must show both that "he acted in good faith and that he had reasonable grounds for believing that his actions did not violate the Act."  *Doty v. Elias*, 733 F.2d 720, 725 (10th Cir. 1984).  Based on the statutory language, the judge, and not the jury, is vested with the authority to determine if the good-faith defense applies. 29 U.S.C. § 260; *see also McClanahan v. Mathews*, 440 F.2d 320, 322 (6th Cir. 1971) ("Since an award of liquidated damages is left to the sound discretion of the court, it is to be granted, or denied, by the court, even when the rest of the case has been tried to a jury.").  Unlike the issue of willfulness, for which the employee bears the burden of proof, the employer bears the burden of proving the good-faith defense.  *See Sinclair v. Automobile Club of Okla., Inc.*, 733 F.2d 726, 730 (10th Cir. 1984); *Ackley v. Dep't of Corrections of the State of Kan.*, 844 F. Supp. 680, 688 (D. Kan. 1994).

---

[9] Plaintiffs have presented evidence that Defendants paid overtime to their HTS-equivalent positions in all other geographic areas except North Carolina and Arizona.  (Patrick Kelley Dep. 29:7-19, *id.* at Ex. 6.)  There is no evidence before the Court, however, regarding similarities between the residences served by ResCare Oklahoma and those served in other geographic regions. Given the fact-specific inquiry required in application of the exemption, this fact has little value without additional information regarding the operations in other states.

Based on the same undisputed facts set forth above, the Court concludes that Defendants have met their burden of establishing the good-faith defense.  Specifically, Defendants' reliance on the DOL letter beginning in 1997 and their internal analysis of the *Johnston* decision in July 2002 are sufficient to establish that Defendants had an honest intention to ascertain and follow the dictates of the Act at relevant times in this case.  With respect to the objective reasonableness component of the analysis, the Court concludes that this is an extremely fact-intensive area of the law and that Defendants did not act unreasonably in concluding that differences between the residences at issue here and the residences at issue in *Johnston* justified the failure to pay overtime.  *See Pabst v. Okla. Gas & Elec. Co.*, 228 F.3d 1128, 1137 (10th Cir. 2000) (upholding decision of trial court that employer acted with reasonable grounds, in part, because the law at issue was "fact-sensitive").  Based on the DOL letter and the comparison chart, Defendants have sufficiently explained how they arrived at their decision not to pay overtime in Oklahoma, *see Sanders v. Elephant Butte Irrigation Dist.*, 112 F.3d 468, 472 (10th Cir. 1997), and the Court views such explanation as objectively reasonable under the circumstances.  For the same reasons explained in detail above in regard to willfulness, the Court finds the existence of similar lawsuits in which Defendants are parties and the existence of Oklahoma case law with distinguishable facts are insufficient to render Defendants' application of the companionship services exemption unreasonable under the circumstances.[10]

---

[10] The Court spent considerable time determining the proper procedure for analyzing the issues of willfulness and the good-faith defense when they are raised together by pretrial motion.  Defendants merged the two inquiries in their motion.  Courts in this district, including the undersigned, have effectively merged the two inquiries at the summary judgment stage.  *See Scott v. Magna Community Living Svcs.*, 04-CV-733-TCK-FHM, Report and Recommendation of Magistrate Frank H. McCarthy (Docket No. 198), adopted as Order of this Court (Docket No. 204); *Welding v. Bios Corp.*, 00-CV-771-EA-FHM (Docket No. 54).  This has occurred because the Tenth Circuit has stated that "[t]he same willfulness standard for the statute of limitations issue applies to the liquidated damages issue."  *Brinkman v. Dep't of Corrections of State of Kan.*, 21 F.3d 370, 373

## VI.    Plaintiffs' Motion for Partial Summary Judgment

In Plaintiffs' latest motion for summary judgment, which was filed pursuant to the undersigned's scheduling order and after Judge Ellison's prior rulings on liability issues, Plaintiffs' new theory to avoid application of the exemption is that Defendants cannot satisfy the "domestic services" component of the exemption contained in 29 U.S.C. § 213(a)(15) because Plaintiffs provided certain services outside the four walls of the clients' homes.  Plaintiffs contend that any time spent outside the client's home is non-exempt because it is not "in or about a private home," as set forth in the definition of "domestic service employment."  Plaintiffs then rely on the general rule that performance of both exempt and non-exempt activities during the workweek defeats any exemption that would otherwise apply, s*ee, e.g.,  Skipper v. Superior Dairies, Inc.*, 512 F.2d 409, 411 (5th Cir. 1975), and conclude that the exemption cannot apply because Plaintiffs undisputedly spent at least some time outside the home.  Defendants do not dispute the general rule that non-exempt time renders an entire workweek non-exempt but argue that accompanying clients to

_____

(10th Cir. 1994).  However, in *Brinkman* and the Sixth Circuit case cited therein, the courts more specifically held that, *after* a jury's finding of willfulness, a district court *must* find a lack of good faith and award liquidated damages.  *Brinkman*, 21 F.3d at 372; *EEOC v. City of Detroit Health Department*, 920 F.2d 355, 358 (6th Cir. 1990).  It may not necessarily be true that a finding of a lack of willfulness dictates the outcome on the good faith defense.  Indeed, at least one court has held that a judge or jury's decision on willfulness only dictates the outcome on the good-faith defense when the violation is found to be willful.  *See Burgess v. Catawba County*, 805 F. Supp. 341, 351 (W.D.N.C. 1992) ("[A]n employer's conduct may be found to be not willful, yet he [still] may be unable to meet his burden of establishing good faith and reasonable grounds so as to avoid the imposition of liquidated damages.").

Thus, the Court found it prudent to address the two questions separately to ensure that Defendants met their burden of proof on the good-faith defense.  The Court also found it prudent to address the issue of willfulness as an initial matter.  This ensures that, if there are disputed issues of fact, a jury can make a determination on willfulness before a court makes any findings on the good-faith defense that may be inconsistent with the verdict.  In this case, because the Court has granted summary judgment to Defendants on the willfulness issue, the Court also addressed the good-faith defense at the summary judgment stage.

activities outside the home or running errands outside the home do not render Plaintiffs' services non-exempt.

A.      General Law

For purposes of discussing this motion, it is necessary to set forth in detail the governing FLSA provisions.  Under the FLSA, employers are not required to pay overtime to "any employee employed **in domestic service employment** to provide **companionship services** for individuals who (because of age or infirmity) are unable to care for themselves."  29 U.S.C. § 213(a)(15) (emphasis added).  Federal regulations promulgated by the Secretary of Labor provide clarification of the words used in the statute:

> As used in section 13(a)(15) of the Act, the term **companionship services** shall mean those services which provide fellowship, care, and protection for a person who, because of advanced age or physical or mental infirmity, cannot care for his or her own needs. Such services may include household work related to the care of the aged or infirm person such as meal preparation, bed making, washing of clothes, and other similar services. They may also include the performance of general household work: Provided, however, That such work is incidental, i.e., does not exceed 20 percent of the total weekly hours worked. The term "companionship services" does not include services relating to the care and protection of the aged or infirm which require and are performed by trained personnel, such as a registered or practical nurse. While such trained personnel do not qualify as companions, this fact does not remove them from the category of covered domestic service employees when employed in or about a private household.

29 C.F.R. § 552.6 (emphasis added).

> As used in section 13(a)(15) of the Act, the term **domestic service employment** refers to services of a household nature performed by an employee **in or about a private home** (permanent or temporary) of the person by whom he or she is employed. The term includes employees such as cooks, waiters, butlers, valets, maids, housekeepers, governesses, nurses, janitors, laundresses, caretakers, handymen, gardeners, footmen, grooms, and chauffeurs of automobiles for family use. It also includes babysitters employed on other than a casual basis. This listing is illustrative and not exhaustive.

29 C.F.R. § 552.3 (emphasis added).

-15-

The definition of domestic service employment contained in § 552.3 is derived from the regulations issued under the Social Security Act (20 CFR 404.1057) and from "the generally accepted meaning"of the term. Accordingly, the term includes persons who are frequently referred to as "private household workers." See S. Rep. 93-690, p. 20. **The domestic service must be performed in or about the private home of the employer whether that home is a fixed place of abode or a temporary dwelling** as in the case of an individual or family traveling on vacation. A separate and distinct dwelling maintained by an individual or a family in an apartment house, condominium or hotel may constitute a private home.

29 C.F.R.§ 552.101(a) (emphasis added).

A recent memorandum by the DOL confirmed that the "companionship services" and the "domestic service employment" components are two separate elements of the exemption, stating that an employee "must both 'provide companionship services' and be employed 'in domestic service employment.'" (*See* DOL Wage and Hour Advisory Memorandum No. 2005-1, Dec. 1, 2005 at 3, Defs.' Resp. to Plfs.' Mot. for Partial Summ. J at Ex. 17.) Thus, applicability of the exemption depends both upon the "nature of an employee's activities"- whether they are companionship services - and "the place of their performance" - whether they are in or about a private home. (*Id.* at 1.) These statements were made by the DOL in the context of addressing whether employees employed by third parties (rather than the individual consumer) qualified for the exemption. Contrary to a 2004 Second Circuit decision, the DOL concluded that the exemption depends only on the "nature of an employee's activities and the place of their performance, without regard to the identity of the employer." (*Id.* at 1.) Thus, all parties agree and the Court concludes that the "place" requirement is a key factor in the analysis. The issue is whether "companionship services" being performed outside the home, such as running errands or accompanying the client to the park or the grocery store, should be considered activities taking place "in or about a private home."

      B.      Prior Stipulation and Law of the Case

Clearly, this is a new theory being asserted by Plaintiffs as grounds for judgment on Defendants' affirmative defense. In all prior briefing to Judge Ellison and all prior proceedings in the case, the only issues in dispute have been (1) whether each individual home at issue was a "private home" as defined by 29 C.F.R. § 552.3, which the Tenth Circuit has instructed must be analyzed on a home-by-home basis; and (2) whether under 29 C.F.R. § 552.6 the exemption did not apply because Plaintiffs spent more than twenty percent of their weekly hours doing general household work not related to the care of the consumer. The parties devoted volumes of briefing and a three-day hearing in front of Judge Ellison on these issues, after which he denied in part and granted in part the motions for summary judgment. In a document submitted to Judge Ellison entitled Pretrial Order Regarding Evidentiary Hearings on Cross Motions for Summary Judgment Scheduled October 17-21, 2005, the parties stipulated that Plaintiffs "provided 'companionship services,' as defined by 29 C.F.R. § 552.6, to ResCare's clients." (*See* Defs.' Resp. to Plfs.' Partial Mot. for Summ. J. at Ex. 16.) Defendants argue Plaintiffs are bound by this stipulation, which extends to the issue of whether the work was performed "in or about" a private home. Plaintiffs assert that they only stipulated that work performed by Plaintiffs was "companionship services" and did not stipulate that work performed met the "domestic service employment" component, *i.e.*, was performed "in or about a private home." (*See* Plfs.' Reply to Defs.' Resp. to Plfs.' Mot. for Partial Summ. J. at 1.)

It seems clear that, until Plaintiffs developed this new theory related to the "place" factor, the parties agreed that the only disputed issues in the case were detailed aspects of the exemption, *i.e.*, the private home requirement and the twenty-percent determination. It also seems clear that Plaintiffs intended to stipulate that the work being performed qualified for all other aspects of the

exemption, including the "place" requirement.  Nonetheless, the precise wording of the stipulation is limited to "companionship services" and references the regulation contained in 29 C.F.R. § 552.6. The stipulation does not mention "domestic service employment" contained in 29 C.F.R. §§ 552.3 and 552.101(a), which is the element Plaintiffs are now disputing.  Accordingly, the stipulation, as written, is not binding as to the precise issue presented.

Defendants also argue that Judge Ellison's prior summary judgment orders, which were limited to the two detailed issues explained above, contain implied rulings that Plaintiffs' services met all other components of the exemption and that it is therefore the "law of the case" that the "in or about" requirement has been met.  *See Pittsburg Cty. Rural Water Dist. No. 7 v. City of McAlester*, 358 F.3d 694, 711 (10th Cir. 2004) (explaining that law of the case doctrine "applies to issues previously decided, either explicitly or by necessary implication").  The Court also rejects this argument.  After the case was transferred to the undersigned, all parties requested a new scheduling conference.  As a result of the conference, Magistrate Judge Frank H. McCarthy entered a schedule that set a deadline for dispositive motions.  Both parties filed motions raising issues that, to the Court's knowledge, had not previously been raised before Judge Ellison.[11]  Due to the unique procedural posture of the case and the fact that any ruling on the "in or about" requirement was only implied in Judge Ellison's prior rulings, the Court finds it improper to apply the "law of the case" doctrine to prevent litigation of this issue.  *See id.* (stating that law of the case doctrine is not an inexorable command but a rule to be applied with good sense).

_____

[11]  For example, Defendants raised the issue of joint employment and argued that ResCare, Inc. was not liable along with ResCare Oklahoma.  Despite the fact that Judge Ellison and the parties had treated both Defendants as potentially liable in prior orders, this Court entertained Defendants' joint employment argument.

C.      "Domestic Service Employment" - "In or About" Requirement

Plaintiffs argue that the companionship exemption's use of the word "in" must be read strictly to require that companionship services only qualify as domestic service employment if they are literally performed within the four walls of the home.  In the Court's view, this argument borders on frivolous.  First, the relevant regulatory language does not use the word "in" a private home but instead uses the words "in or about" a private home.  *See* 29 C.F.R. §§ 552.3, 552.101(a).  Second, the DOL memorandum, which is the primary legal authority used to support Plaintiffs' argument, does not address this particular issue but instead discusses generally that separate analyses must be completed of (1) the type of service being provided, and (2) the place the service is being performed. (*See* DOL Wage and Hour Advisory Memorandum No. 2005-1, Dec. 1, 2005, Ex. 17 to Defs.' Resp. to Plfs.' Mot. for Partial Summ. J.)   Plaintiffs cite no authority for the novel position that, in order to qualify as a domestic service employee, the service provider can never leave the home.  This proposition is, in fact, directly contrary to 29 C.F.R. § 552.3's inclusion of "chauffeurs" as domestic service employees.  Under Plaintiffs' interpretation, chauffeurs would cease providing domestic services when they left the garage.  Similarly, cooks would cease providing domestic services when they went grocery shopping.  The Court concludes that the HTS and HTSSs in this case satisfy the "place" requirement of performing services "in or about" the private home, even when they leave the home to take their clients to errands, appointments, and activities in the community.  The Court finds this conclusion wholly consistent with the letter and spirit of the companionship services exemption.

Defendants'   Motion   for   Partial   Summary   Judgment   Regarding   the   Good Faith/Reasonableness Defense to Alleged Willful Violations of the Fair Labor Standards Act

(Docket No. 260) is GRANTED in its entirety.  Plaintiffs' Motion for Partial Summary Judgment

(Docket No. 240) is DENIED.

**IT IS SO ORDERED THIS 19th DAY of DECEMBER, 2006.**

**TERENCE KERN**
**UNITED STATES DISTRICT JUDGE**

-20-